USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-5-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YAKIMI GOMEZ-KADAWID,

                          Petitioner,

- against -

ROBERT KIRKPATRICK,

                          Respondent.

**REPORT AND RECOMMENDATION**

08 Civ. 5819 (SHS) (RLE)

To the HONORABLE SIDNEY H. STEIN, U.S.D.J.:

## I. INTRODUCTION

*Pro Se* Petitioner Yakimi Gomez-Kadawid ("Gomez-Kadawid"), a New York state prisoner at Elmira Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Gomez-Kadawid filed his Petition on April 18, 2008.

On December 12, 2003, Gomez-Kadawid was convicted, after a jury trial, of three counts of criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03(2)), and was sentenced to three concurrent twelve-year terms of imprisonment. Gomez-Kadawid contends that his incarceration violates the United States Constitution because: (1) improper comments were made to prospective jurors during *voir dire*; (2) the trial court erred with its jury charge regarding the automobile presumption; and (3) the testimony of a codefendant was insufficient to establish his intent. (Am. Pet. For Writ of Habeas Corpus ("Am. Pet.") at 3-4.) For the reasons set forth below, I recommend that the Petition be **DENIED**.

## II. BACKGROUND

### A. Factual Background

On July 20, 2002, at approximately 12:00 a.m., two undercover police detectives, Thomas Garcia and Alejandro Zapata, parked their unmarked car on Broadway between 164th

and 165th Streets in Manhattan. (Trial Transcript ("Tr.") at 362-65, 430-33.) The detectives were operating as part of a "buy and bust" operation, and were ready to attempt to purchase drugs as soon as they received a communication that a field team was in place. (*Id.* at 363, 367, 433-34.) While they were waiting, a black Suburban parked in front of them. (*Id.* at 367, 385, 433-34, 446.) The detectives observed several men exit the Suburban and talk with each other on the curb. (*Id.* at 367, 434, 451.) A rust-colored Monte Carlo pulled up parallel to the Suburban, and the driver, later identified as Gomez-Kadawid, spoke with someone inside the Suburban. (*Id.* at 367-68, 389, 435-36, 454-55.) The detectives backed up to allow the Monte Carlo to park in front of them (*id.* at 368-69, 435, 454), and witnessed a man, later identified as Danny Paez, get into the Monte Carlo (*id.* at 369, 389). Garcia exited his car, and observed Paez hand what appeared to be money to Gomez-Kadawid. (*Id.* at 369-71, 389, 456.) Garcia returned to his car, and all of the men inside the Monte Carlo and the Suburban exited their cars, crossed the street, and entered a restaurant. (*Id.* at 372-73, 436.) Approximately ten minutes later, the same men emerged from the restaurant accompanied by at least two other people. (*Id.* at 372-73, 436-37, 459.)

Four men, including Paez, entered the Suburban, and Gomez-Kadawid went to the trunk of the Monte Carlo, opened it, and began "messing around" inside it for several seconds. (*Id.* at 437-38.) Garcia and Zapata noticed what appeared to be the butt of a gun in his waistband. (*Id.* at 375, 401-03, 420-21, 438, 462-66.) After Gomez-Kadawid entered the Suburban, the detectives radioed the field team that they had observed a "possible firearm." (*Id.* at 377, 409-11, 428, 439, 501, 550.) Several minutes later, the detectives saw Gomez-Kadawid exit the Suburban, return to the trunk of the Monte Carlo, retrieve a dark-colored sweater from a white

2

box in the trunk, and return to the Surburban. (*Id.* at 375, 441.) The Suburban then started driving South on Broadway. (*Id.* at 378, 442-32, 503-04.)

After receiving a radio transmission from the detectives that the Suburban was on the move, and that a passenger possessed a possible hand gun, Detective Leonard Craig, along with two other police officers, started following it. Fifteen minutes later, the officers, with the assistance of back-up, stopped the Suburban. (*Id.* at 500, 504.) The officers removed the five occupants and patted them down. (*Id.* at 508-09.) Craig then searched the car and found several masks, gloves, duct tape, and three guns, and the occupants were all placed under arrest. (*Id.* at 510-13, 527.)

Gomez-Kadawid and the other occupants of the vehicle were indicted on August 9, 2002, and were jointly charged with three counts of second-degree criminal possession of a weapon under Penal Law § 265.03(2) and six counts of third-degree criminal possession of a weapon under Penal Law § 265.03(4). On December 4, 2003, Defendants moved to suppress the physical evidence recovered from the Suburban, its occupants, and the Monte Carlo on the grounds that the police did not have probable cause to stop the Suburban and conduct the ensuing searches. (*Id.* at 3-10.) The court denied the motion, holding that the police had probable cause to conduct the searches based on the undercover officer's report that Gomez-Kadawid possessed a firearm. (*Id.* at 15-24.)

On December 10, 2003, a jury trial began. Gomez-Kadawid represented himself, with the assistance of an attorney who acted as his legal advisor. (*Id.* at 37-39.) In addition to the testimony of the police officers involved in the arrest, Paez also testified for the State, stating that he had asked Gomez-Kadawid to participate in a plan to rob a drug dealer, that Gomez-Kadawid pulled a gun from his waistband and handed it to him while they were driving in the Suburban,

3

and that he had placed the gun in the side panel of the armrest of his seat next to Gomez-Kadawid. (Tr. at 593-94, 603-05.)

Gomez-Kadawid testified on his own behalf, and stated that he worked for a telecommunications company in Manhattan selling cell phones. (*Id.* at 670.) On the day of his arrest, he stated that Paez had invited him to a restaurant to sell phones to Paez's friend. (*Id.* at 672.) He explained that he drove to Paez's location, and the two smoked marijuana inside his Monte Carlo. (*Id.* at 674.) Before going inside the restaurant, he went to the trunk of his car to retrieve a box of cell phones. (*Id.* at 676-77.) He stated that he was not carrying a gun, and that what the Detectives saw was a mobile phone in a pouch attached to his belt. (*Id.* at 676.) Once inside the restaurant, he was introduced to Paez's friends and ordered food. (*Id.* at 680-81.) Before he was served, one of Paez's friends received a phone call, and said that he needed to pick up a friend. (*Id.* at 681.) Gomez-Kadawid decided to go along, left the restaurant, and got inside the Suburban with Paez and three others. (*Id.* at 682.) He testified that he only learned that the others had guns after they started hiding them after they saw the police. (*Id* at 692-96.)

On December 12, 2003, Gomez-Kadawid was convicted of three counts of criminal possession of a weapon in the second degree. (*Id.* at 850.) On January 22, 2004, he was sentenced to a concurrent term of twelve years' imprisonment on each of the three charges as well as five years of post-release supervision. (Sentencing Transcript at 21.)

## B. Procedural Background

On direct appeal, Gomez-Kadawid was represented by counsel, and raised the following three claims: (1) that the trial court erred when it instructed the prospective jurors that the State believed that the cooperating witness was telling the truth; (2) that the trial court improperly charged the jury as to the automobile presumption, because (a) the court instructed the jurors that

4

if they determined that he had been in the car when the guns were found, they should presume he knowingly possessed the guns; (b) the instruction improperly suggested that a factual issue had been resolved; and (c) the instruction "obliterated" his defense, which was based on testimony that he was unaware that anyone in the car possessed a gun until the police arrived; and (3) that his sentence was excessive and should be reduced in the interest of justice. (*See* Decl. in Opp. To Pet. For Habeas Corpus ("Decl. in Opp."), Ex. A (Gomez-Kadawid Brief to Appellate Division, March 2004) at 15-21.)

Gomez-Kadawid raised four additional claims in a supplemental *pro se* brief: (1) that the court should have granted his suppression motion because: (a) the radio transmission from the undercover officers to the back-up team was insufficient to support the arrest and subsequent search of the Suburban; (b) the undercover officers' observation of a gun handle in his waistband permitted the police to stop the Suburban and make an inquiry, but did not support a "more intrusive search;" (c) any evidence seized pursuant to the arrest should have been suppressed as "fruit of the poisonous tree;" and (d) after the police officers frisked the occupants of the Suburban and did not find any weapons, the officers were in no apparent danger and had no basis to search the Suburban; (2) that the trial court improperly failed to charge the jury that Danny Paez was an accomplice; (3) that Paez's uncorroborated accomplice testimony was insufficient to establish the intent element of second-degree criminal possession of a weapon; and (4) that he was deprived of due process by the court's failure to "meaningfully respond" to the jury's request for a note regarding Paez's meeting with the prosecution, which contained a prior inconsistent statement by Paez. (*See* Decl. in Opp., Ex B (Supplemental *Pro Se* Brief to Appellate Division, March 2004) at 7-19.)

On June 8, 2006, the Appellate Division unanimously affirmed Gomez-Kadawid's conviction. *People v. Gomez*, 30 A.D.3d 191, 191 (1st Dept. 2006). The Appellate Division held that the court properly denied his suppression motion, as "[t]here [was] no basis for disturbing the court's credibility determinations, which [were] supported by the record." *Id.* at 191. The court further held that it "perceive[d] no basis for reducing the sentence." *Id.* The court held that Gomez-Kadawid's remaining claims were unpreserved, and "decline[d] to review them in the interest of justice." *Id.* at 191-92. The court observed that, "by choosing to represent himself at trial, he assumed the risk that he might be unable to alert the trial court to relevant legal issues." *Id.* at 192. Lastly, the court stated that if it were to review the unpreserved claims, it "would find no basis for reversal." *Id.* The New York Court of Appeals denied Gomez-Kadawid's leave to appeal on September 14, 2006. *People v. Gomez*, 7 N.Y.3d 848 (2006).

Gomez-Kadawid's original petition was received on April 23, 2008, by the Western District of New York. On May 5, 2008, the case was transferred to this District. On June 27, 2008, the Honorable Kimba M. Wood ordered Gomez-Kadawid to submit an amended petition within sixty days that (1) addressed why the petition should not be barred by the one-year statute of limitations and (2) included all the grounds on which the petition was based. He subsequently filed an amended petition that was received on September 29, 2008.

### III. DISCUSSION

**A. Threshold Issues**

**1. Timeliness**

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. 28 U.S.C. § 2244(d)(1). A conviction becomes final "when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],"

that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)) (internal quotations omitted). On September 14, 2006, the New York Court of Appeals denied Gomez-Kadawid's application for leave to appeal, and his conviction became final on December 13, 2006. Gomez-Kadawid's original petition was filed on April 18, 2008,[1] 127 days after the one-year limitations period had lapsed, and is therefore untimely.

Gomez-Kadawid's contends that he is entitled to equitable tolling of the statute of limitations because he suffered a mental health breakdown in August 2007 and was confined in various mental health units without his legal papers until January 31, 2008. (Am. Pet. at 2-3.) Gomez-Kadawid was transferred from Bare Hill Correctional Facility to Clinton Correctional Facility unit for psychiatric observation on August 16, 2007. (Decl. of Paul M. Tarr ¶ 3.) On September 24, 2007, he was transferred to the Central New York Psychiatric Center, where he was hospitalized until he was transferred to Wende Correctional Facility on January 31, 2008. (Am. Pet. at 2; Decl. of Paul. M. Tarr ¶ 3.) He claims that he worked on his petition prior to his mental breakdown, but that his legal papers were not transferred with him when he was hospitalized. (Am. Pet. at 2-3) After he was released from the Psychiatric Center, he immediately requested his legal papers, but never received them. (*Id.*) If the 168 days that Gomez-Kadawid was hospitalized between August 16, 2007, and January 31, 2008, were equitably tolled from the statute of limitations, his petition would be timely.

Because the time bar provided in 28 U.S.C. § 2244(d) is a statute of limitations rather than a jurisdictional bar, a court may equitably toll the limitations period if "rare and exceptional

---

[1] A petition submitted by a prisoner is deemed filed on the date that it is submitted to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Noble v. Kelly*, 246 D.3d 93 (2d Cir.), *cert. denied*, 534 U.S. 886 (2001). In this case, it is unclear when Gomez-Kadawid submitted his petition for mailing because the petition is unsigned and undated. Accordingly, the Court will use April 18, 2008, as his filing date, which is three business days before the Petition was received by the *Pro Se* Office of the Western District of New York.

7

circumstances" prevented a petitioner from filing promptly. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (*per curiam*)). To warrant such tolling, a petitioner must establish that "extraordinary circumstances" prevented him from timely filing, and that he acted with "reasonable diligence" during the period he seeks to toll. *Id.* Equitable tolling only applies if a petitioner can "demonstrate a causal relationship between the extraordinary circumstances . . . and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). The term extraordinary "does not refer to the uniqueness of the petitioner's circumstances, 'but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (quoting *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)).

The denial of access to legal materials by the state to a petitioner may establish a right to equitable tolling. *See, e.g., Valerie v. Stinson*, 224 F.3d 129 (2d Cir. 2000) (holding that the intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a correctional officer is "extraordinary" as a matter of law.). "Equitable tolling is warranted when some event effectively prohibits the petitioner from pursuing habeas, such as the misplacement of files, or being denied access to materials necessary to file a habeas." *Id.* (quoting *Raynor v. Dufrain*, 28 F. Supp. 2d 896, 900 (S.D.N.Y. 1999)). Here, Gomez-Kadawid contends that he was denied access to his legal materials during the period of his hospitalization. Shortly before he was transferred from Clinton Correctional Facility to the Psychiatric Center, Gomez-Kadawid's property, including his legal papers, was collected, inventoried, and stored at Bare Hill Correctional Facility for the duration of his stay at the Psychiatric Center. (Decl. of Paul M. Tarr ¶ 4.) When he was transferred, he was told that he could not receive his legal papers if he

8

was going to be released from the Center within six months. (*See* Reply Affirm. in Supp. of Am. Pet. ("Reply Affirm.") at 6.) Although Gomez-Kadawid never made a formal request for his medical records while he was at the Psychiatric Center, prison officials state that a request for the records would likely have been denied because he was not committed for more than six months. (Decl. of Paul M. Tarr ¶ 4.)

Mental illness can also serve as a basis for equitable tolling of the statute of limitations. *Bolarinwa*, 593 F.3d at 231. Determining whether equitable tolling is warranted for a petitioner's mental illness is a highly case-specific inquiry. *Id.* at 232 (quoting *Brown v. Parckchester South Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002)). It is the petitioner's burden to demonstrate the appropriateness of equitable tolling, and, "in order to carry this burden, she must offer a 'particularized description of how her condition adversely affected her capacity to function generally or in relationship to her rights.'" *Id.* (quoting *Boos v. Runyon*, 201 F.3d 178, 184 (2d Cir. 2000)). A petitioner's "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling." *Boos*, 201 F.3d at 185.

Gomez-Kadawid alleges that he suffered a mental health breakdown, and that he was subsequently confined to the Central New York Psychiatric Center without his legal documents. (*See* Am. Pet. at 2.) He states that he was first hospitalized in August 2007 because he began hearing voices that told him to kill himself through starvation. (*See* Reply Affirm. in Supp. of Am. Pet. ("Reply Affirm.") at 4.) Records indicate that Gomez-Kadawid stopped eating on August 17, 2007, and was in danger of starving to death after he quickly lost ten percent of his body weight. (*See* Reply Affirm., Ex. B. at 3.) On September 12, 2007, the Superintendent of

9

Clinton Correctional Facility requested a court order to permit involuntary feeding of Gomez-Kadawid. (*See* Reply Affirm., Ex. B, at 4.) After he was admitted to the Psychiatric Center, he reported auditory hallucinations, and was diagnosed with paranoid schizophrenia. (*See* Reply Affirm., Ex. D.)

The Court finds that equitable tolling is warranted in this case. Gomez-Kadawid's mental illness, combined with his inability to access his legal papers during the period of his hospitalization, constituted an extraordinary circumstance that prevented him from filing his petition. Accordingly, the period of hospitalization, from August 16, 2007, to January 31, 2008, is tolled, and his petition is therefore timely.

### 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), a petitioner must exhaust his constitutional claims in state court before proceeding with them to federal court. 28 U.S.C. § 2254(b)(1)(A). There are two prongs to this requirement. To satisfy the procedural prong, a petitioner must have utilized all available avenues of appellate review within the state court system. *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994). To satisfy the substantive prong, a petitioner's claims in state court must have been raised in federal law or constitutional terms. *Jones v. Vacco*, 126 F.3d 408, 413-14 (2d Cir. 1997) (citing *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 192 (2d Cir. 1982)). Although not an exacting standard, to satisfy the substantive prong, a petitioner must have informed the state courts of "both the factual and the legal premises of the claim he asserts in federal court." *Id.* at 413. All of the claims raised in Gomez-Kadawid's Amended Petition were raised on direct appeal. *Gomez*, 815 N.Y.S.2d 824. Further, he attempted to appeal the claims to the New York Court of Appeals, but leave was denied. *Gomez*, 7 N.Y.3d 848. As such, all of his claims are exhausted.

### 3. Procedural Bar

A claim is precluded from habeas review if: (1) the state court declined to address the petitioner's federal claim because petitioner failed to meet a state procedural requirement and (2) the state court decision rested on an independent and adequate state ground. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). A state law ground is "adequate" if "the state's insistence on compliance with its procedural rule serves a legitimate state interest." *Wainwright v. Sykes,* 433 U.S. 72, 83 n. 8 (1977) (quoting *Henry v. Mississippi,* 379 U.S. 443, 447 (1965)). Further, the adequacy of a procedural rule rests on whether the rule is firmly established and regularly followed in the specific circumstances presented in this case. *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir. 2003). The Second Circuit has recognized that New York's preservation rule typically constitutes an independent and adequate state procedural ground on which the Appellate Division may deny a criminal defendant's appeal. *Garcia v. Lewis,* 188 F.3d 71, 76-78 (2d Cir. 1999); *Clark v. Perez,* 510 F.3d 382, 390 (2d Cir. 2008). Here, all of Gomez-Kadawid's claims are procedurally barred because the Appellate Division determined that they were unpreserved, contemporaneous objections not having been made at trial, and thus declined to review the claims on the merits. *Gomez,* 30 A.D.3d at 191.

To overcome a procedural bar, a petitioner must show: (1) cause for the default and actual prejudice barring the claim, or (2) a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 749-50 (internal citations and quotations omitted). In this case, Gomez-Kadawid has made no arguments in his Amended Petition to establish cause for his default or that a fundamental miscarriage of justice would result if the Court did not review the claims. On direct appeal, however, he argued that his failure to object at trial should be excused because he

represented himself at trial. The Appellate Division declined to excuse his failure to object on those grounds, and stated that, by choosing to represent himself at trial, "he assumed he risk that he might be unable to alert the trial court to relevant legal issues." *Gomez*, 30A.D.3d at 191. As will be discussed below, Gomez-Kadawid's claims are meritless, and, therefore, the Court need not decide whether, in the circumstances of this case, his *pro se* status constitutes sufficient cause to excuse his failure to preserve his claims by making objections during trial.

## B. Merits of the Claims

### 1. Standard of Review

AEDPA constrains a federal court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [The Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 2. The Trial Court's Comments To Prospective Jurors During *Voir Dire* Did Not Deprive Gomez-Kadawid of a Fair Trial

For a federal court to grant relief because of comments made by the trial judge during *voir dire*, a petitioner must show that the comments not only misstated the law, but also deprived

12

him of a fair trial. *See Sams v. Walker*, 18 F.3d 167, 171 (2d Cir. 1994); *Brown v. Superintendent*, 02 Civ. 4810, 2003 WL 1948803, at *5 (S.D.N.Y. Apr. 23, 2003). A comment is grounds for relief only if it "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). A comment made by a trial judge may not be judged in "artificial isolation" but must be evaluated in the context of the instructions as a whole and the trial record. *Id.* The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.* (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Although this standard is generally used for jury instructions, this standard has also been applied to comments made during *voir dire. See Brown*, 2003 WL 1948803, at *5; *Thomas v. Fischer*, 03 Civ. 5388, 2004 WL 725636, at *6 (S.D.N.Y. Apr. 5, 2004).

Gomez-Kadawid contends that the trial court improperly told prospective jurors during *voir dire* that the State believed that a cooperating witness was telling the truth that Gomez-Kadawid was guilty. (Am. Pet. at 3.) During *voir dire*, Gomez-Kadawid questioned a prospective juror about the believability of Paez, a witness who was cooperating with the prosecution. (Tr at 322.) The court responded that the jurors would be told how to evaluate the evidence after being sworn in. (*Id.*) A prospective juror then asked whether the State believed Paez was telling the truth. (*Id.* at 322-23.) The court responded in the affirmative, and went on to explain:

> Somebody is going to come in here and say something. Whether you accept it, if it is accepted it rises to a certain level of proof. I don't know it hasn't happened yet, but, yes, the State thinks he is guilty. Whether you folks decide there is enough proof when this process is why we are here.

(*Id.*) These comments did not deprive Gomez-Kadawid of a fair trial. The court did not express partiality to one side over the other, and did not suggest that Gomez-Kadawid was guilty or that

13

Paez was credible. The court stated that the prosecution believed that their witness was telling the truth, and that it was up to the jurors to decide whether the State had met its burden of proof. (*Id.* at 323.) To the extent that any juror believed that the court was expressing an opinion about the credibility of Paez, the court's jury instructions remedied that mistaken impression. The court instructed the jurors that they "were exclusively and completely the judges of facts," and that "nothing counts less in a jury trial than a Judge's opinion." (Tr. at 800.) Accordingly, Gomez-Kadawid has failed to demonstrate that the trial court's comments during *voir dire* deprived him of a fair trial, and the Court recommends that the claim be **DENIED** as meritless.

### 3. The Trial Court's Jury Charge Was Not Improper

"Jury charges are normally a matter of state law," and do not warrant federal habeas corpus review unless the alleged errors "deprive[d] the defendant of a federal constitutional right." *Perez v. Greiner*, 00 Civ. 5504, 2005 WL 613183, at *6 (S.D.N.Y. Mar. 14, 2005) (citing *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993)). To succeed on a challenge to a jury instruction, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle,* 502 U.S. at 72 (1991) (quoting *Cupp*, 414 U.S. at 147); *see also Gibbs v. Donnelly*, 402 Fed. Appx. 566 (2d Cir. 2010). Here, Gomez-Kadawid claims that the court improperly instructed the jury that they should presume that he knowingly possessed the guns recovered in the Suburban, even if he only learned that there were guns in the vehicle moments before he was apprehended by the police. (Am. Pet. at 4.)

During the jury charge, the trial court instructed the jurors that "[t]he presence of one or more firearms, pistols, in a vehicle, that is not a taxicab, is presumptive proof that each occupant knowingly possessed each pistol provided the pistols are not hidden somewhere on the person of any of the occupants." (Tr. at 820-21.) The court stated that "[t]he law says that if a pistol is

other than on somebody's person ... everyone of the occupants knowingly possessed that item." (*Id.* at 821.) Towards the end of the jury charge, Gomez-Kadawid asked the court whether the automobile presumption applied even if he only knew of the presence of a firearm seconds before the car was pulled over. (*Id.* at 829.) The court said that it would apply, and told the jury: "if you find that a person and a gun were in a vehicle at the same time, then knowing possession is presumed." (*Id.* at 830.) The court then added that it was up to the jurors whether they would apply the presumption. (*Id.*)

By New York statute, a jury may make certain presumptions when a gun is recovered from an automobile. The presence of an unlicensed firearm in an automobile is presumptive evidence of possession by every occupant of the automobile, unless one of the occupants has a valid license to carry a concealed weapon, the gun is found on the person of one of the occupants, or the defendant is a duly licensed driver in the pursuit of his trade. *See* N.Y. Penal Law § 265.15(3). The presumption may apply regardless of the length of time an occupant is in a vehicle or whether an occupant knows about the presence of the gun. *See, e.g., People v. Terry*, 148 A.D.2d 478, 479 (2d Dept. 1989). In this case, the charge properly conveyed the statutory presumption to the jury. Furthermore, the court properly instructed the jury that they were not bound to apply the automobile presumption, and that they should assess on their own whether the factual circumstances of the case supported the presumption. (Tr. at 821.) Accordingly, Gomez-Kadawid's claim is without merit because the jury instruction was not improper, and I recommend that the claim be **DENIED**.

### 4. The Evidence Presented Was Legally Sufficient

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime."

*In re Winship*, 397 U.S. 358, 364 (1970). A conviction is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). Further, a habeas court must defer to the assessments of the strength of the evidence and credibility of the witnesses that were made by a jury and may not substitute its view of the evidence for that of the jury. *Id.* A state court's determination of a factual issue is presumed to be correct, and is unreasonable only where the petitioner meets the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Thus, a petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). Here, Gomez-Kadawid contends that the testimony of his alleged accomplice, Danny Paez, was legally insufficient to support the intent element of his conviction of second degree criminal possession of a weapon. (Am. Pet. at 4.)

When considering the sufficiency of the evidence to support a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Ponnapula*, 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999). Under New York law, criminal possession of a weapon in the second degree requires proof that a defendant knowingly possessed a loaded firearm with the intent to use it unlawfully against another. N.Y. Penal Law § 265.03(2). Possession may be proven by either actual physical possession or by constructive possession. *See* N.Y. Penal Law § 10.00(8). A person has constructive possession of a loaded firearm if he exercises "dominion or control" over the area in which the weapon and ammunition is found. *People v. Manini*, 79 NY 2d 561, 573 (1992); *People v. Carvajal*, 6 N.Y.3d 305, 324 (2005). As previously discussed, the presence of any unlicensed firearm inside

16

an automobile is presumptive evidence of the firearm's possession by everyone in the car. N.Y. Penal Law § 265.03(2); *see People v. Lemmons*, 40 N.Y.2d 505, 509-10 (1976). Furthermore, possession of an unlicensed, loaded firearm is presumptive evidence of the intent to use the firearm unlawfully against another. N.Y. Penal Law § 265.15(4); *See Simmons v. Fisher*, 02 Civ. 4811, 2006 WL 2129770 (S.D.N.Y. July 26, 2006).

In this case, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have reasonably found that all the essential elements of the crime were proven beyond a reasonable doubt. The jurors were permitted to presume that Gomez-Kadawid possessed the hand guns found in the Suburban, and, based on his possession of an unlicensed and loaded firearm, that he intended to use it unlawfully against another. The testimony introduced at trial supports this finding. Paez testified that he had asked Gomez-Kadawid to participate in a plan to rob a drug dealer, that Gomez-Kadawid pulled a gun from his waistband and handed it to him while they were driving in the Suburban while they were looking for the dealer, and that he placed the gun in the side panel of the armrest of his seat next to Gomez-Kadawid. (Tr. At 593-94, 603-05) Paez's testimony was corroborated by Detectives Garcia and Zapata, who testified that they both saw the butt of a gun in Gomez-Kadawid's waistband. (*Id.* at 375, 401-3, 420-21, 438, 462-66.) Paez's testimony was further corroborated by Detective Craig's testimony about the location of the guns in the Suburban, which was consistent with Paez's statements. (*Id.* at 512-13.)

Accordingly, the testimony of Paez was corroborated by the testimony of the detectives who testified that they saw Gomez-Kadawid with a gun in his waistband and the testimony of the detective who found three guns in the Suburban. This evidence supports the jury's finding that Gomez-Kadawid possessed at least one unlicensed, loaded firearm. This finding is in and of

itself presumptive evidence that he intended to use the gun unlawfully. N.Y. Penal Law § 265.15(4). Accordingly, the accomplice testimony of Paez is legally sufficient to support the intent element of the charge criminal possession of a weapon in the second degree, and I recommend that this claim be **DENIED** as meritless.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Gomez-Kadawid's petition be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636 (b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: May 4, 2011**
**New York, New York**

                                                       **Respectfully Submitted,**

                                                       **The Honorable Ronald L. Ellis**
                                                     **United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

Petitioner[2]
Yakima Gomez-Kadawid
04-A-0515
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13024

Yakima Gomez-Kadawid
04-A-0515
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14901-0500

Respondent's Counsel
Paul M. Tarr
Office of the Attorney General, New York State
120 Broadway
New York, NY 10271

---

[2] According to the New York State Department of Corrections website, Gomez-Kadawid is currently being held at Elmira Correctional Facility. The mailing address provided on ECF, however, has him being held at Auburn Correctional Facility. The Court is sending copies of this Report and Recommendation to both facilities.